## Commonwealth v. Maybro Asphalt Co.

*Edward H. Carney*, for Commonwealth.

*T. P. Dunn*, for defendant.

LAUB, J., June 11, 1963.—Defendant is engaged in the business of preparing and selling paving materials and, with one exception, has always made sales tax payments and returns according to the requirements of the Selective Sales and Use Tax Act of March 6, 1956, P. L. (1955) 1228, sec. 1, as amended, 72 PS §3403-1, et seq. The single exception involved a business transaction with a contracting company which defendant, in good faith, maintained was nontaxable. Unfortunately for defendant's position, however, it carried the arrangements on its books as a series of sales, and, as a consequence, it was assessed for taxation by the Commonwealth and this assessment was sustained on appeal. In making the assessment, the Commonwealth's agent erred in computing the amount of interest due and thereby set the stage for this litigation.

In the course of negotiations between the parties concerning the taxability of the transactions which defendant failed to return, defendant continued to assert their tax exempt status but recognized that it was at fault in the manner of recording them. In consequence, it expressed its willingness to pay the tax but refused to pay any penalties. A tentative arrangement in this regard was made with the agent of the Bureau of Sales and Use Tax, and a check was given him for the full amount of tax plus the erroneously computed interest. No penalties were included in the check, and a notation was entered on its face indicating that it was for delinquent sales taxes January 1, 1957, to September 30, 1960. In a subsequent letter to the bureau, defendant stated that the check was given under protest and that it would "open the matter" if any question of penalties arose. Penalties were assessed, however, and defendant appealed to the Sales Tax Board for re-

lief. The board denied relief, and defendant then appealed to the Board of Finance and Revenue of the Treasury Department. On this appeal the entire assessment was in review and it was sustained; penalties, however, were remitted.

The bureau then notified defendant of reassessment, correcting the error made by the Commonwealth's agent in computing the interest, but defendant refused to pay, asserting that when its check was cashed and the proceeds retained, there had been an accord and satisfaction between the parties concerning the amount of tax due, plus interest, and denying the Commonwealth's right to exact additional interest payments. The Commonwealth then filed a lien against defendant in this court and defendant petitioned to strike it off. This is what brings the matter before us now.

It is the Commonwealth's view that we lack jurisdiction to entertain the petition because appeals in sales and use tax matters are to the Court of Common Pleas of Dauphin County, and for the further reason that there was no accord and satisfaction, largely because whatever agreement was entered into was with a person or agency unauthorized to effectuate such an agreement. The crux of this latter contention is that the offer to compromise was not made to the creditor but to a third person.

Section 544 of the Selective Sales and Use Tax Act, 72 PS §3403-544, provides that an aggrieved person may appeal from the decision of the Board of Finance and Revenue to the Dauphin County courts in the manner provided for appeals in the case of tax settlements. There is no provision in the act allowing a collateral attack such as has been attempted here. True, while we have control of the judgments and liens filed in this court, and may open, strike or restrict execution thereon, we may not do so except when our authority to act is expressly or impliedly conferred upon us. This court

is a part of the machinery designed for the collection of sales and use taxes, and once it has been legally determined that a tax has been assessed and is unpaid, and the taxable has not had recourse to the statutory means provided for contesting the same, we have no right to interfere. The foundation of the lien is the unpaid tax, and the only way to determine the Commonwealth's right to the tax in the amount stated is by following the appellate procedure which the act provides. We could strike this lien only by concluding that the assessment was improper, but under the law we have no right to review its validity. The Board of Finance and Revenue had the entire matter of the assessment before it for disposition when defendant took its appeal, including defendant's contention of accord and satisfaction had defendant seen fit to raise that issue; and, in consequence, that matter cannot now be raised. The lien is a mere implementation of the collection procedures allowed under the act and may in no way be construed as a transfer of jurisdiction to us to adjudicate matters properly allocated to another tribunal. To decide otherwise would be to approve a procedure whereby a taxable could refuse to pay an assessment and then, when a lien is filed in the county of his residence, move to strike it off on grounds which should properly have been adjudicated elsewhere. This would nullify the legislative provisions respecting both the review of assessments and the means of collecting the same.

Nor are we convinced that an accord and satisfaction can constitutionally be reached where the taxable nature of an item is conceded. Once it has been established that a subject is taxable, the tax must be assessed according to the established rate for all taxables throughout the taxing district, in this case the Commonwealth. It is true that in some instances where there is agreement that an assessment was erroneously made, or where there is agreement that only part of the subject

matter is taxable, compromises can legally be made. Further, once the tax has been uniformly assessed and becomes uncollectible in full, some sort of compromise may be effected in the best interests of the Commonwealth which is interested in collecting taxes for the operation of the government and not in owning property, but this is a far cry from being consonant with the according of benefits to a taxable which are not generally available to all taxables of the same class. Article IX, sec. 1, of the Constitution provides that all taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws. This provision of the Constitution allows certain exemptions under circumstances not present here, but it certainly cannot be construed as authorizing favoritism between taxables in the same class.

Under the statute, interest is imposed on any tax which remains unpaid on or before the last date prescribed for payment (72 PS §3403-570), and no authority is given to compromise or alter this provision. Thus, interest is as much a part of the tax as the original levy and all taxpayers must be assessed accordingly, otherwise there would be no uniformity as constitutionally mandated. The matter of penalties is entirely different, for under the act (72 PS §3403-574), these may be remitted in whole or in part where the taxable was acting in good faith without negligence. This provision applies to taxables within the same class, and any penalty abatement thereunder would not impinge upon the Constitution. A penalty is an engine of collection; it is not a part of the tax itself.

We conclude, therefore, that where the taxability of an item is conceded, there is no authority in any of the Commonwealth's agents to compromise the rate imposed, either by abating interest or reducing the amount due. This is a matter of legislative and consti-

tutional rigidity. To hold otherwise would permit abuses of all descriptions, would violate the Constitution and permit the favoring of one taxable over another merely because he entered a protest contending that he or his property is not taxable.

And now, to wit, June 11, 1963, the rule granted September 5, 1962, to show cause why the lien should not be struck off, is discharged and the lien, which was removed by the filing of a bond, is reinstated without prejudice to plaintiff's right to collect on the bond at its option. Defendant shall pay the costs.